**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37375**

| | | |
|---|---|---|
| RYAN J. RODRIGUEZ, | ) | |
| | ) | **2011 Opinion No. 10** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: March 10, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| BELINDA ALEXIA RODRIGUEZ, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. Michael J. Reardon, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate, reversing order dismissing petition to modify visitation, <u>affirmed</u>; <u>case</u> <u>remanded</u>.

Jerry M. Ward, Boise, for appellant.

Bauer & French, Boise, for respondent. Charles B. Bauer argued.

---

MELANSON, Judge

Ryan J. Rodriguez appeals from the district court's intermediate appellate decision reversing the magistrate's order dismissing Belinda Alexia Rodriguez's petition to modify visitation. For the reasons set forth below, we affirm the district court's decision and remand to the magistrate for further proceedings.

## I.

## FACTS AND PROCEDURE

Ryan and Belinda were divorced in 2001. The decree of divorce awarded Ryan and Belinda joint legal custody of their two children with primary physical custody awarded to Ryan. Belinda was ordered to pay child support in the amount of $289 per month. Approximately one month after the entry of the decree of divorce, Ryan filed a motion to modify custody. Belinda failed to appear at the hearing, and the divorce decree was modified to give Ryan full physical custody of the children. Belinda was awarded six hours of supervised visitation once a week.

1

Belinda did not make any child support payments. In 2006, Ryan filed a motion for contempt against Belinda for failure to pay child support. Belinda failed to appear at the contempt hearing and was subsequently arrested, found guilty of contempt, and sentenced to forty-five days in jail, which she served from September to November 2006. Sometime during that same year, the parties' son was diagnosed with leukemia.

In 2007, Belinda filed a petition to modify visitation so she could visit her son more frequently while he was in the hospital. In response, Ryan filed an additional motion for contempt alleging Belinda had failed to pay child support for the months of August through December 2006. A hearing on Belinda's petition was delayed due to scheduling difficulties, but a temporary order was issued allowing Belinda additional visitation of the parties' son at the hospital. In late 2008, the magistrate conducted a hearing on Ryan's motion. The magistrate found that Belinda was incarcerated from late-September to mid-November 2006 and that Belinda was incapable of making payments during that time. The magistrate further found that Belinda was not incarcerated in August, early September, or December 2006 and failed to make child support payments during those months. The magistrate ultimately found Belinda in contempt for August, early September, and December 2006. Based on this finding of contempt, the magistrate dismissed Belinda's petition to modify visitation holding that, as a contemnor, Belinda was prevented as a matter of law from having a hearing on the petition.

Belinda appealed the dismissal of her petition to modify visitation to the district court. The district court reversed, holding, in pertinent part, that the magistrate erred by dismissing Belinda's petition without a hearing and remanded the case for further proceedings. Ryan appeals the district court's reversal of the magistrate's dismissal of Belinda's petition to modify visitation. Ryan also seeks costs and attorney fees on appeal.

## II.

## ANALYSIS

Ryan argues that the district court erred in reversing the dismissal of Belinda's petition to modify visitation. Specifically, Ryan asserts that the magistrate correctly applied the law to conclude that it was without the authority to hear Belinda's modification action regarding visitation because she was found in contempt for failure to pay child support. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We

2

examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* An abuse of discretion will be found if the magistrate's findings of fact are not supported by substantial evidence or if the magistrate does not correctly apply the law. *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (Ct. App. 2007).

Generally, a party who is in contempt for failure to pay child support is not entitled to a hearing on a motion to modify a divorce decree unless the party purges himself or herself of the contempt. *See Sauvageau v. Sauvageau*, 59 Idaho 190, 193, 81 P.2d 731, 732 (1938). In *Sauvageau*, a wife filed for divorce from her husband and requested custody of the couple's two minor children. The district court refused to grant the divorce on a procedural technicality, but entered an order giving custody of the couple's two children, one to each parent, and ordered the husband to pay spousal and child support to the wife. The husband subsequently filed an appeal contesting the district court's order. Before addressing the merits of the husband's arguments on appeal, the Idaho Supreme Court noted that the husband was in contempt for failing to pay spousal and child support. The Court went on to state, in dicta, that because the husband was in contempt it was "doubtful if [he] would be entitled to a hearing on appeal until he either complies with the order or purges himself of contempt." *Sauvageau*, 59 Idaho at 193, 81 P.2d at 732. The Court went on to state that it was not passing on that question. *Id*.

The Idaho Supreme Court's statement, in dicta, in *Sauvageau* was the genesis of a line of cases that describe a contemnor's rights in relation to a request to modify a divorce decree. The Court next addressed the issue in *Brown v. Brown*, 66 Idaho 625, 165 P.2d 886 (1946). In *Brown* a husband, who was found in contempt for failure to pay child support, sought modification of his child support payments and of a child custody order which granted custody to his children's grandparents. The Court held that the husband had no right to be heard on his motion to modify child support until he had purged himself of the contempt by payment of the past-due installments. *Id*. at 628, 165 P.2d at 887. The Court also held that the husband had no right to be heard on his motion to modify child custody unless he purged himself of contempt or could provide a valid excuse for nonpayment. *Id*. at 629, 165 P.2d at 887. The Court went on to note, however, that the welfare of the children was paramount and remanded the case for further findings on whether the modification of child custody in favor of the grandparents was in the best interest of the children. *Id*. at 629-30, 165 P.2d at 888.

Several months later, the Court again addressed the issue of a contemnor's ability to move for modification of a child custody agreement. *Hoagland v. Hoagland*, 67 Idaho 67, 170 P.2d 609 (1946). In *Hoagland*, a husband, who was found to be in contempt for failure to pay child support, moved to modify a child custody decree. The Court held that, as a contemnor, the husband was not entitled to a hearing on his motion to modify because "the trial court was without authority to proceed with the hearing or modify the decree until the applicant had purged himself of the contempt by payment of the delinquent installments." *Hoagland*, 67 Idaho at 70, 170 P.2d at 611. The Court based this holding on *Sauvageau* and *Brown*. *Hoagland*, 67 Idaho at 69, 170 P.2d at 610. The holding in *Hoagland* marks a change in the Court's stance on the rights of contemnors who are seeking modifications of child support or child custody decrees. While *Sauvageau* and *Brown* held that a contemnor does not have a right to modify a divorce decree until he or she has purged himself or herself of contempt, *Hoagland* holds that a court is without authority to hear a contemnor's motion until he or she has been purged of the contempt. Thus, under *Hoagland*, a court lacks authority to entertain the motion until the contemnor can demonstrate he or she has purged themselves from the contempt by paying the past-due child support installments. The *Hoagland* Court provided no procedural opportunity for a contemnor to explain his or her present inability to make payments or to pay off the past-due installments.

The Court next addressed this issue in *Lusty v. Lusty*, 70 Idaho 382, 219 P.2d 280 (1950). In *Lusty*, a husband who was in arrears on his alimony payments sought to have the court modify the amount of his payments. The trial court conducted a unified hearing to first determine whether the husband was in contempt for failure to pay child support and, if it determined he was not, to also consider his motion to modify child support. *Id.* at 384, 219 P.2d at 281. The Court noted that the burden was on the husband to show that he did not have the ability to pay. *Id.* at 388, 219 P.2d at 284. The Court held that the husband failed to meet this burden because the evidence he provided via testimony and other sources did not sufficiently demonstrate that he did not have the ability to pay and that, consequently, he had not purged himself of contempt. *Id.* The Court went on to hold that he was not entitled to urge a modification of his divorce decree until he had complied with the terms of his original divorce decree. *Id. See also Hoagland*, 67 Idaho at 69, 170 P.2d at 609.

This Court most recently addressed the issue of whether a contemnor may move to modify child support in *Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (Ct. App. 1988). In *Nab*, a

husband, who was in prison and also in arrears in his child support payments, sought to modify the child support provision of his divorce decree. The trial court ruled that, as a matter of law, it could not entertain Nab's motion to modify until Nab's contempt was purged. On appeal, this Court reversed holding that a trial court is without authority to modify a child support order if the movant is in contempt unless the movant shows that, for reasons beyond the movant's control, purging himself or herself of the contempt is impossible. *Nab*, 114 Idaho at 518, 757 P.2d at 1237. This Court held that, because Nab was in prison, it was presently impossible for him to purge himself of his contempt and that, therefore, he was entitled to a hearing on his motion to modify his child support payments. *Id*. at 519, 757 P.2d at 1238. In reaching this conclusion, we noted that Nab's incarceration was not voluntary because it was for an unrelated crime and was not incurred for the purpose of avoiding child support payments. *Id*.

Here, the parties do not dispute the magistrate's finding that Belinda was in contempt for failure to pay child support. Belinda argues, however, that the magistrate failed to properly apply the law because it did not determine whether, under *Nab*, it was presently impossible for her to purge herself from her contempt. We begin by noting that *Nab* dealt with modification of child support and not modification of child custody or visitation. Having noted that distinction, we conclude that the holding of *Nab* applies in modification of child custody or visitation proceedings. Under *Nab*, the magistrate was without authority to conduct a hearing on Belinda's motion to modify only if it determined that it was presently possible for Belinda to purge herself of her contempt. In making this finding, the magistrate should have considered whether, at the time of the hearing on her motion to modify child custody, it was impossible for Belinda to purge herself of the contempt incurred for the period of August to late-September and December of 2006.[1] The burden was on Belinda to show that it was impossible at the time of the hearing to purge herself of the arrearage she incurred from August to late-September and December 2006.

In this case, the magistrate failed to make a determination of whether it was presently impossible for Belinda to purge herself of her contempt. The magistrate erred in failing to make this determination before it decided whether or not to conduct a hearing on Belinda's motion to

---

[1] Belinda was also found in contempt for nonpayment of child support for the period of July 2001 to September 2006. The July 2001 to September 2006 contempt finding was not before the magistrate and the parties did not raise it as an issue on appeal. Therefore, we will only address the magistrate's finding of contempt for August to mid-September and December 2006.

5

modify child custody. Therefore, we remand this case to the magistrate for a determination of whether it was impossible at the time of the hearing to purge herself of the arrearage she incurred from August to late-September and December 2006.

Ryan seeks costs and attorney fees on appeal. We have affirmed the district court, and Ryan is not the prevailing party on appeal. Belinda did not seek attorney fees on appeal. Costs, however, are granted as a matter of course to Belinda as the prevailing party. I.A.R. 40.

## III.

## CONCLUSION

We hold *Nab* applies to both modification of child support and child custody proceedings. We also hold that the magistrate erred in failing to conduct a hearing on Belinda's motion to modify child custody without first determining whether it was impossible for Belinda to purge herself of her contempt. Therefore, we affirm the district court's decision and remand to the magistrate for further proceedings. Costs on appeal, but not attorney fees, are awarded to respondent, Belinda Alexia Rodriguez.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**